**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KUDZAI SHONHAI,** | : | |
| **Petitioner** | : | **CIVIL ACTION NO. 3:24-229** |
| **v.** | : | **(JUDGE MANNION)** |
| **CRAIG LOWE,** | : | |
| **Respondent** | : | |

## <u>MEMORANDUM</u>

Currently before the Court are *pro se* Petitioner Kudzai Shonhai ("Shonhai")'s petition for a writ of habeas corpus under 28 U.S.C. §2241, motion to supplement the record, and two motions to expedite. For the reasons stated below, the Court will (1) grant Shonhai's habeas petition and order Respondent to provide him with an individualized bond hearing, (2) grant his motion to supplement the record, and (3) deny his motions to expedite as moot.

## I.    BACKGROUND

Shonhai, a native and citizen of Zimbabwe, is an asylee in the United States. (Doc. 11 at 7, 8, 54.) Shonhai began the process of seeking asylum by submitting an I-730 Refugee/Asylee Relative Petition, which was approved on October 12, 2005. (*Id.* at 9.) On August 7, 2006, when he was nineteen (19) years old, Shonhai was admitted as an asylee to the United

States at Chicago, Illinois. (*Id.* at 8, 54.) At no point after his entry to the United States did Shonhai adjust his status to that of a lawful permanent resident. (*Id.* at 8, 9.)

On May 4, 2011, Shonhai, through a negotiated guilty plea, was convicted of sexual battery of a fifteen (15)-year-old girl (Ind. Code §35-42-4-8), a class D felony, in the Hendricks County Superior Court in Danville, Indiana. (*Id.* at 9, 17, 23–30, 37.) On the same date, the trial court sentenced Shonhai to one thousand ninety five (1,095) days' incarceration; however, he was given twenty (20) days of jail-time credit, and one thousand seventy five (1,075) days suspended to probation, with the first one hundred sixty (160) of those days on home detention. (*Id.* at 17, 18, 37.)

On October 13, 2013, Shonhai was convicted of operating a motor vehicle while intoxicated (Ind. Code §9-30-5-1), a class C misdemeanor, in the Marion County Superior Court in Indianapolis, Indiana. (*Id.* at 9, 38.) The trial court sentenced Shonhai to one (1) year of incarceration, gave him four (4) days of jail-time credit, and three hundred sixty one (361) days suspended to probation. (*Id.* at 38.)

On March 16, 2021, a grand jury sitting in the United States District Court for the Southern District of Indiana issued a three (3)-count indictment charging Shonhai with (1) false claim of United States citizenship (18 U.S.C.

§911), (2) aggravated identity theft (18 U.S.C. §1028A(a)(1)), and (3) conspiracy to possess identity documentation with intent to defraud (18 U.S.C. §1028(a)(4)(f)). (*Id.* at 66–68.) Pursuant to a guilty plea agreement, Shonhai pleaded guilty to falsely claiming United States citizenship and conspiracy to possess identity documentation with intent to defraud on August 24, 2022. (*Id.* at 11, 69–85.) Shonhai was sentenced to an aggregate sentence of six (6) months' incarceration on August 29, 2022. (*Id.* at 8, 9, 11–16.)

Approximately six (6) months after Shonhai's sentencing, on February 16, 2023, the United States Citizenship and Immigration Services issued a notice of intent to terminate asylum status to him while he was still incarcerated at Federal Correctional Complex Allenwood. (*Id.* at 9.) The following day, February 17, 2023, United States Immigration and Customs Enforcement ("ICE") served a notice to appear on Shonhai. (*Id.* at 53.) The notice to appear alleged that Shonhai was removable pursuant to the following three (3) charges under the Immigration and Nationality Act ("INA"): (1) conviction for a crime involving moral turpitude committed within five (5) years after admissions for which a sentence of one (1) year or longer may be imposed (8 U.S.C. §1227(a)(2)(A)(i)); (2) convictions for two (2) crimes involving moral turpitude not arising out of a single scheme of criminal

misconduct, occurring any time after admission (8 U.S.C. §1227(a)(2)(A)(ii)); and (3) falsely representing to be a citizen of the United States for any purpose or benefit under the INA or a federal or state law (8 U.S.C. §1227(a)(3)(D)). (*Id.* at 54–7.) These charges arose out of Shonhai's convictions for sexual battery and false claim of United States citizenship. (*Id.* at 54, 57.) Later, on March 31, 2023, ICE added Shonhai's conviction for conspiracy to possess identity documentation with intent to defraud as another conviction supporting his charges of violating the INA. (*Id.* at 86–87.)

On March 14, 2023, Shonhai appeared for a hearing before United States Immigration Judge Kuyomars Golparvar. (*Id.* at 88–93.) On the same date, Shonhai, acting through counsel, filed a motion to terminate the removal proceedings. (*Id.* at 94–109.) Shonhai later filed an amended motion to terminate after ICE added his conspiracy conviction to his notice to appear. (*Id.* at 121–56.) In the amended motion, Shonhai argued that none of his convictions qualified as crimes involving moral turpitude and his conviction for false claim of citizenship did not violate Section 1227(a)(3)(D). (*Id.* at 126–33.)

Shonhai appeared with counsel for a removal hearing with Judge Golparvar on April 4, 2023. (*Id.* at 157–71.) During the hearing, Shonhai admitted to the factual allegations in the notice to appear and in ICE's

- 4 -

additional charge (I-261 form) (*id.* at 161–63), but he denied the three (3) charges of removability in the notice (*id.* at 163). Judge Golparvar determined that if Shonhai was found removable, Zimbabwe would be the removal country. (*Id.* at 165.)

Judge Golparvar issued a written decision on Shonhai's motion to terminate, amended motion to terminate, and the charges of removability on April 17, 2023. (*Id.* at 172–87.) In this written decision, Judge Golparvar sustained ICE's three (3) charges of removability under the applicable caselaw in the Third and Fourth Circuit Courts of Appeals. (*Id.* at 174–86.)

Shonhai appeared for another hearing before Judge Golparvar on April 25, 2023. (*Id.* at 188–92.) During the hearing, Shonhai requested that his counsel withdraw from the case. (*Id.* at 189.) Shonhai's counsel later withdrew at a hearing held with Judge Golparvar on May 1, 2023. (*Id.* at 193–96.) Additionally, Shonhai represented to Judge Golparvar during the May 1, 2023 hearing that he was in the process of obtaining a new attorney from the CAIR Coalition. (*Id.* at 195, 198.)

Judge Golparvar adjourned the hearing twice to allow for the resolution of Shonhai's legal representation issue. (*Id.* at 195–203.) At a hearing on May 16, 2023, Shonhai indicated to Judge Golparvar that the CAIR Coalition was unable to represent him in the matter. (*Id.* at 205–06.) Shonhai again

denied the charges in the notice to appear; however, Judge Golparvar "resustain[ed] these charges based on [ICE's] documentary evidence and . . . the applicable case law that [was] cited" in his prior written decision. (*Id.* at 207.) Judge Golparvar then provided Shonhai with an I-589 application for him to seek asylum, withholding removal, and protection under the United Nations Convention Against Torture ("CAT"), insofar as Shonhai testified that he believed he would be targeted for violence if he returned to Zimbabwe. (*Id.* at 207–08.) Shonhai was also provided with a 209(c) waiver for asylees. (*Id.* at 208–09.) Judge Golparvar admonished Shonhai that if he did not complete the applications, they would be deemed abandoned, and the Judge would order Shonhai removed. (*Id.* at 210.)

Shonhai applied for relief through the I-589 application and the 209(c) waiver on June 8, 2023. (*Id.* at 213–14.) Judge Golparvar scheduled a merits hearing for August 10, 2023, and informed Shonhai about what he needed to do prior to the hearing. (*Id.* at 214–24.)

On August 10, 2023, Judge Golparvar held a merits hearing, during which he denied Shonhai's applications for relief and ordered him removed to Zimbabwe. (*Id.* at 236–79.) Judge Golparvar, despite recognizing that it was a "close call," denied Shonhai's application for an adjustment of status with a 209(c) waiver "as a matter of discretion" because his "two federal

convictions combined with the sexual battery state conviction" were "just too great, . . . just too significant negative factors to warrant a favorable exercise of discretion." (*Id.* at 229–33.) Judge Golparvar also determined that Shonhai was ineligible for asylum and explained that even if Shonhai was eligible, his application would be denied "as a matter of discretion for the same exact reason" for denying his 209(c) waiver, *i.e.*, his criminal record. (*Id.* at 233.) As for Shonhai's application for protection under the CAT, Judge Golparvar concluded that Shonhai failed to establish that "it is more likely than not that he would be tortured by the government or by individuals the government cannot or will not control" if he returned to Zimbabwe. (*Id.* at 234.)

Shonhai reserved his right to appeal from Judge Golparvar's decision. (*Id.* at 239, 276). The Board of Immigration Appeals ("BIA") received Shonhai's appeal on August 28, 2023 (*id.* at 280), and acknowledged it on August 31, 2023 (*id.* at 328). The BIA established a briefing schedule on October 31, 2023, which set a deadline of November 21, 2023, for the filing of briefs. (*Id.* at 330–32.)

Shonhai submitted a request for a copy of the transcript from his merits hearing, which the BIA received on December 19, 2023. (*Id.* at 333.) On January 12, 2024, the BIA issued a notice indicating that it would provide Shonhai with a copy of the transcript, but it would not reset the briefing

schedule insofar as Shonhai previously filed a brief. (*Id.* at 334–36.) On January 31, 2024, Shonhai requested that the BIA correct the transcript because it contained references to portions of the merits hearing that were indiscernible. (*Id.* at 338–42.)

On May 31, 2024, the BIA issued a written decision dismissing Shonhai's appeal in part and remanding the record for further proceedings. (Doc. 19-1.) In this decision, the BIA upheld Judge Golparvar's "determination that DHS satisfied its burden to establish by clear and convincing evidence [Shonhai's] removability under" Section 1227(a)(2)(A)(i)–(ii). (*Id.* at 5.) As such, the BIA did not address whether Shonhai was also removable under Section 1227(a)(3)(D). (*Id.*)

Regarding Shonhai's applications for relief from removal, the BIA concluded that Shonhai was "unable to establish his eligibility for asylum and withholding of removal under the BIA." (*Id.*) Additionally, the BIA found that Shonhai failed to meet his burden for CAT protection. (*Id.* at 6.) However, concerning Shonhai's application for adjustment of status and 209(c) waiver, the BIA determined that "further fact-finding and analysis" by the Immigration Judge was necessary. (*Id.*) Thus, the BIA remanded the case to the Immigration Judge to allow the judge to "make sufficient findings of fact as to the conditions of Zimbabwe, make findings as to both the positive and

negative factors presented in this case, and show how, in balancing such factors, the Immigration Judge reached a determination as to whether a favorable exercise of discretion is merited or not." (*Id.*)[1]

While Shonhai's appeal was pending before the BIA, Shonhai filed the instant *pro se* Section 2241 petition, which the Clerk of Court docketed on February 7, 2024. (Doc. 1.) In the petition, Shonhai indicates that he is currently detained at the Pike County Correctional Facility ("PCCR"), he has been detained for an overall period of twelve (12) months, and he "challeng[es his] continued prolonged detention without a bond hearing" in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. (*Id.* at 1.) For relief, Shonhai requests that the Court "order[] a bond hearing at which the Government bears the burden of establishing that [his] continued detention is justified." (*Id.*)

The Court issued an Order on February 15, 2024, which, *inter alia*, directed Respondent to file a response to Shonhai's habeas petition. (Doc. 5.) Respondent filed a response in opposition to the petition along with supporting exhibits on March 7, 2024. (Docs. 10, 11.) Shonhai filed a reply

---

[1] BIA Appellate Immigration Judge Greer issued an opinion concurring in part and dissenting in part with the majority's decision, in which he explained that he was persuaded by Shonhai's arguments that his sexual battery conviction did not qualify as a crime involving moral turpitude. (*Id.* at 8.)

brief to Respondent's response on March 18, 2024. (Doc. 12.) Shonhai has

since filed a motion to supplement the record with the BIA's decision (Doc.

19) as well as two motions to expedite these proceedings (Docs. 18, 20).

Respondent has also recently filed a letter in which he, *inter alia*, informs the

Court that an Immigration Judge denied Shonhai's requests for relief on

remand, indicates that Shonhai has an appeal pending before the BIA, and

requests a period of thirty (30) days should the Court determine that Shonhai

is entitled to an individualized bond hearing. (Doc. 24 at 1–2.) Shonhai's

Section 2241 petition and motions are ripe for disposition.

## II.   LEGAL STANDARD

Section 2241 confers jurisdiction upon the federal district courts to

consider cases challenging the detention of aliens during removal

proceedings. *See Demore v. Kim*, 538 U.S. 510 (2003); *Zadvydas v. Davis*,

533 U.S. 678 (2001). Thus, a habeas petition under Section 2241 is the

proper vehicle for an inmate to challenge "the fact or length of confinement,"

*Preiser v. Rodriguez*, 411 U.S. 475, 494 (1973), or the "execution" of their

confinement. *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 241–42 (3d

Cir. 2005). Further, the Court must look to the remedy requested by the

petitioner to determine if they are seeking relief available in a habeas petition.

"When a petitioner seeks immediate release from custody, the 'sole federal

remedy' lies in habeas corpus." *Camacho Lopez v. Lowe*, 452 F. Supp. 3d 150, 158 (M.D. Pa. 2020) (citing *Preiser*, 411 U.S. at 500).

## III.    DISCUSSION

The Court begins with a summary of the INA's relevant statutory framework for arresting and detaining aliens already present in the United States pending their removal. The INA authorizes the Attorney General to issue a warrant to arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. §1226(a). While awaiting the removal decision, the Attorney General "may continue to detain the arrested alien" or "may release the alien" on "bond" or "conditional parole," "[e]xcept as provided in [Section 1226(c).]" *Id.* §1226(a)(1)–(2). "Section 1226(c) . . . carves out a statutory category of aliens who may *not* be released under §1226(a)" if they "fall[] into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (citing 8 U.S.C. §1226(c)). Instead, "the Attorney General 'may release' one of those aliens '*only if* the Attorney General decides' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk." *Id.* at 303 (quoting 8 U.S.C. §1226(c)(2)).[2] "[T]ogether with §1226(a), §1226(c) makes

---

[2] Subsection (c)(2) was later renumbered as (c)(4).

clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States." *Id.* (quoting 8 U.S.C. §1226(a)).

With this statutory framework in mind, the Court preliminarily notes that although the parties disagree about various issues in this case, they appear to agree about the applicable caselaw for this Court to apply when resolving Shonhai's habeas petition. In this regard, they appear to agree that Shonhai is raising, and can raise, an as-applied constitutional challenge to his continued detention under 8 U.S.C. §1226(c) pursuant to the Third Circuit Court of Appeals' decision in *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203 (3d Cir. 2020). *See* (Docs. 1 at 7–8; 10 at 15–16, 24). They also appear to agree that the Due Process Clause of the Fifth Amendment requires a hearing if Shonhai's continued detention has "become[] unreasonable." *German Santos*, 965 F.3d at 210; *see* (Docs. 1 at 6; 10 at 11). Finally, they appear to agree that in assessing the reasonableness of Shonhai's continued detention, this Court should apply the "nonexhaustive list of four factors" identified in *German Santos*. 965 F.3d at 210–11. *See* (Docs. 1 at 7; 10 at 24). Therefore, the Court will now analyze the *German Santos* factors to determine whether Shonhai's continued detention has become unreasonable for due process purposes. In doing so,

the Court recognizes that "[r]easonableness is a highly fact-specific inquiry." *German Santos*, 965 F.3d at 210 (citation and internal quotation marks omitted).

The "nonexhaustive list of four factors" for consideration are: (1) "the duration of detention"; (2) "whether the detention is likely to continue"; (3) "the reasons for the delay"; and (4) "whether the alien's conditions of confinement are meaningfully different from criminal punishment." *German Santos*, 965 F.3d at 211 (citation, internal quotation marks, and alteration omitted). As explained below, after considering these factors, the Court concludes that Shonhai's continued detention has become unreasonable, and he is entitled to a "bond hearing to gauge whether he still needs to be detained to keep him from fleeing or committing more crimes." *Id.* at 213.

## A.    The Duration of Detention

Respondent points out in his opposition brief that Shonhai had been detained for approximately twelve-and-a-half (12 ½) months at the time he filed the brief on March 7, 2024. (Doc. 10 at 25.) Respondent argues that the Court should not "simply total[] the months that Shonhai has been detained"; instead, the Court "should consider the reasons for the length of detention." (*Id.* at 26.) Respondent contends that the reasons for Shonhai's continued detention include the process he is receiving as he litigates his removal

proceedings, which has been proceeding at a "reasonable pace." (*Id.* at 21–22 (quoting *Crooks v. Lowe*, No. 18-cv-47, 2018 WL 6649945, at *2 (M.D. Pa. Dec. 19, 2018))). Respondent also asserts that even if the Court would focus on the total length of Shonhai's detention, several Judges in this District have found that the length of Shonhai's detention or even lengthier periods of detention do not warrant an individualized bond hearing. (*Id.* at 26–27.)

The problem with Respondent's argument, through no fault of his own, is that Shonhai's length of detention is considerably longer now than it was when he filed his petition in this case. If the Court uses Respondent's representation that Shonhai had been detained for approximately twelve-and-a-half (12½) months at the time Respondent filed his brief on March 7, 2024, to calculate the time Shonhai has spent detained to date, it appears that Shonhai has been detained for approximately two (2) years without an individualized bond hearing. As far as this Court is aware, no Judge in this District has determined that such a length of time in detention was reasonable. *See, e.g.*, *Elyardo v. Lechleitner*, No. 23-cv-1089, 2023 WL 8259252, at *2–3 (M.D. Pa. Nov. 29, 2023) (finding that approximately nineteen (19) months in detention was unreasonable); *Vega v. Doll*, No. 17-

cv-1440, 2018 WL 3756755, at *5 (M.D. Pa. Aug. 8, 2018) (determining that twenty-one (21) months in detention was unreasonable).

Even though there is no "bright-line threshold" for a term of detention to definitively weigh in favor of a petitioner-alien, Shonhai's approximately two (2) years in detention is approaching the two-and-a-half (2½)-year period that the Third Circuit determined "weigh[ed] strongly" in the petitioner's favor in *German Santos*. 965 F.3d at 212. Accordingly, the Court finds that Shonhai's length of detention, which is "[t]he most important factor," weighs strongly in his favor. *Id.* at 210.

## B.    The Likelihood of Continued Detention

Shonhai argues that his detention is likely to continue insofar as there is a possibility that the BIA will remand his case to the immigration judge, and even if the BIA denied his appeal, he would petition for a review of his removal order with the appropriate circuit court of appeals. (Doc. 1 at 10.) As such, he contends that this factor weighs in his favor. (*Id.* at 10–11.) On the other hand, Respondent asserts that this factor should be neutral because it "relies on unhelpful hypothesizing of future events, and improperly requires litigants to argue to this Court the merits of their position at the administrative level." (Doc. 10 at 28.)

The Court agrees with Respondent insofar as he asserts that consideration of this second factor requires hypothesizing. It is impossible for anyone to predict how much longer Shonhai could remain detained. Nevertheless, the Court must attempt to do so here.

As to Shonhai's removal proceedings, Respondent represents that Shonhai currently has a pending appeal with the BIA from the Immigration Judge's denial of relief on remand. (Doc. 24.) Although Shonhai's avenues for relief appear to be limited at this stage, his BIA appeal remains pending, and Shonhai has indicated that he will pursue a petition for review with the appropriate court of appeals if his BIA appeal is unsuccessful. Therefore, "there is no end in sight" to Shonhai's removal proceedings. *German Santos*, 965 F.3d at 213. Accordingly, this second factor also weighs in favor of Shonhai.

## C.   Reasons for the Delay

Shonhai contends that this factor should weigh in his favor because he has not unreasonably delayed his removal proceedings; rather, he has "consistently contested the removal charges and diligently pursued relief." (Doc. 1 at 11.) To the extent that there has been any unnecessary delay, Shonhai argues that it was the result of the Government's carelessness when his detention location changed from the Clinton County Correctional

- 16 -

Facility to PCCF in October 2023. (*Id.* at 12.) Shonhai indicates that the BIA seemingly did not get notice of his address change, despite Shonhai being told that it would, which resulted in the transcript he requested being sent to the wrong facility. (*Id.*) Additionally, he did not timely receive a copy of a motion for summary affirmance that the Government filed with the BIA even though the Government filed a certificate of service with the motion representing that he was served. (*Id.* at 12–13.)

Respondent argues that the Government has not intentionally delayed or unreasonably prolonged Shonhai's removal proceedings, and those proceedings "have moved forward at the normal rate for aliens who contest removability and apply for relief." (Doc. 10 at 23–24.) Respondent also maintains that "[i]f there was a delay in the proceedings, it [was] attributable to Shonhai's decision to change counsel on two occasions," which required Judge Golparvar to continue the proceedings to allow for the resolution of Shonhai's legal representation issue. (*Id.* at 24.)

After considering the parties' arguments, the Court finds that this third factor is neutral. There does not appear to be any unreasonable delay in the case due to actions by either party. Even though Shonhai changed counsel twice, and there was a delay while the CAIR Coalition investigated whether it would assign an attorney to Shonhai's case, the removal proceedings

largely moved forward during this period. Thus, any delays relating to Shonhai's decision to change counsel were relatively minor.

The Court also does not find that the Government was responsible for delays. While Shonhai accuses the Government of acting carelessly and in bad faith relating to providing (or not timely providing) certain documents to him, there is no indication that these acts caused his removal proceedings to be delayed in any respect. (Doc. 1 at 12–13.) Contrary to Shonhai's arguments, this third factor is focused on a delay in his removal proceedings and not on conduct that he believes prejudiced him relating to the merits of his case while it was on appeal with the BIA. Accordingly, the Court finds the third factor to be neutral.

## D.    Conditions of Confinement

Respondent concedes that this factor weighs in favor of Shonhai in large part because the Third Circuit has already determined that "the conditions at PCCF were punitive as to immigration detainees." (Doc. 10 at 29 (citing *German Santos*, 965 F.3d at 213)).[3] As such, this Court finds that this factor weighs in favor of Shonhai.

---

[3] Respondent notes that out of Shonhai's overall period of detention, only five (5) of those months had been at PCCF. (Doc. 10 at 11.) While seemingly true at the time Respondent filed his brief, Shonhai has now been detained at PCCF for approximately seventeen (17) months.

### E. Whether Shonhai's Detention Under Section 1226(c) Has Become Unreasonable

After considering the aforementioned factors, the Court concludes that Shonhai's detention has become unreasonable due to him spending approximately two (2) years in detention, the likelihood that he will continue to be detained for the foreseeable future, and the conditions of his confinement at PCCF. Therefore, Shonhai's continued detention without an individualized bond hearing violates his right to due process. Accordingly, the Court will grant Shonhai's Section 2241 petition and direct Respondent to provide him with an individualized bond hearing within twenty-one (21) days,[4] at which the Government shall bear the burden of proof to justify his continued detention by clear and convincing evidence. *See German Santos*, 965 F.3d at 213–14 (establishing Government's burden of proof at bond hearing).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Shonhai's Section 2241 petition and order Respondent to provide Shonhai with an individualized

---

[4] Although Respondent requested a period of thirty (30) days to arrange for an individualized bond hearing in his recent letter (Doc. 24 at 2), considering the length of Shonhai's detainment so far, the Court concludes that a period of twenty-one (21) days allows Respondent sufficient time to schedule Shonhai's hearing.

bond hearing within twenty-one (21) days. The Court will also grant

Shonhai's motion to supplement the record with the BIA's May 31, 2024

decision and deny his motions to expedite as moot.


                                        *s/ Malachy E. Mannion*
                                        **MALACHY E. MANNION**
                                        **United States District Judge**

**DATE: February 14, 2025**
24-229-01