**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

KUDZAI SHONHAI,                        :

      Petitioner           :         CIVIL ACTION NO. 3:24-229

      v.                        :              (JUDGE MANNION)

CRAIG LOWE,                             :

      Respondent           :

<u>**MEMORANDUM**</u>

This Court previously determined that the length of *pro se* Petitioner

Kudzai Shonhai ("Shonhai")'s immigration detention violated his due process

rights under the Fifth Amendment to the United States Constitution and,

consequently, granted his petition for a writ of habeas corpus under 28

U.S.C. §2241 and ordered Respondent to provide him with an individualized

bond hearing before an immigration judge ("IJ") during which the government

would have to prove by clear and convincing evidence that he was a danger

the community and a flight risk. Two (2) weeks later, Shonhai received a

bond hearing before an IJ and was denied bond; however, he contends that

the hearing violated the Court's Order because his hearing was not

individualized and otherwise violated his due process rights. As such, he has

moved to enforce the Court's Order directing that he receive an

individualized bond hearing. In addition, Shonhai has filed a motion to substitute the Respondent, a motion to compel discovery, a motion to reconsider a prior denial of his motion for appointment of counsel, a motion to supplement the record with a copy of the transcript from his bond hearing, and a motion to expedite. For the reasons stated below, the Court will grant Shonhai's motions to supplement and to substitute, deny his motion to compel discovery as moot, deny his motion for reconsideration, deny his motion to expedite as moot, and deny his motion to enforce.

I.    **BACKGROUND**

Shonhai, a native and citizen of Zimbabwe, commenced this action by filing his Section 2241 petition, which the Clerk of Court docketed on February 7, 2024. (Doc. 1.) At the time he filed the petition, Shonhai was an asylee who had been detained for an overall period of approximately one (1) year and was detained at the Pike County Correctional Facility ("PCCF") in Pennsylvania. (*Id.* at 1.) He also had an appeal pending before the Board of Immigration Appeals ("BIA") arising from an IJ's decision which, *inter alia*, ordered him removed to Zimbabwe, determined that he was ineligible for asylum, denied his application for protection under the United Nations Convention Against Torture ("CAT"), and denied his application for an

adjustment of status and waiver of inadmissibility under Section 209 of the Immigration and Nationality Act ("INA"). (Doc. 11 at 229–342.)

In his habeas petition, Shonhai asserted that his prolonged detention without a bond hearing violated the Due Process Clause of the Fifth Amendment. (Doc. 1 at 1.) For relief, Shonhai sought an order directing that he receive an individualized bond hearing before an immigration judge at which the Department of Homeland Security ("DHS") had the burden to show that he should remain detained by clear and convincing evidence. (*Id.*)

This Court issued an Order on February 15, 2024, which, *inter alia*, directed Respondent Craig Lowe ("Lowe") to file a response to Shonhai's habeas petition. (Doc. 5.) Lowe filed a response in opposition to the petition along with supporting exhibits on March 7, 2024. (Docs. 10, 11.) Shonhai filed a reply brief to Lowe's response on March 18, 2024. (Doc. 12.)

On May 31, 2024, the BIA issued a written decision dismissing Shonhai's appeal in part and remanding the record for further proceedings. (Doc. 19-1.)[1] The BIA upheld the IJ's determination that Shonhai was

---

[1] Following the BIA's decision, Shonhai filed a motion to supplement the record in this case with the BIA's decision on June 24, 2024 (Doc. 19), which the Court granted (Doc. 26 ¶3).

removable, ineligible for asylum, and failed to meet his burden for CAT protection. (*Id.* at 6.) As for Shonhai's application for adjustment of status and waiver of inadmissibility under Section 209 of the INA, the BIA determined that "further fact-finding and analysis" by the IJ was necessary and remanded the case to the IJ for further fact-finding and an explanation for denying Shonhai's application for a 209(c) waiver. (*Id.*)

On August 27, 2024, an IJ held a hearing on Shonhai's application for an adjustment of status and waiver of inadmissibility. (Doc. 37-27.) On November 13, 2024, the IJ denied Shonhai's application and terminated his asylee status. (Doc. 37-28.) Shonhai then timely appealed the IJ's decision to the BIA. (Doc. 37-29.)

On February 14, 2025, while Shonhai's appeal was still pending before the BIA, this Court issued a Memorandum and Order which, *inter alia*, granted Shonhai's Section 2241 petition and directed Lowe to provide Shonhai with an individualized bond hearing within twenty-one (21) days. (Docs. 25, 26.) The Court's Memorandum explained that the IJ must ensure that the government bore the burden of proof to justify Shonhai's continued detention by clear and convincing evidence. (Doc. 25 at 19.) On February 25, 2025, Shonhai filed a motion to seal, in which he requested to have this

case sealed or "have it published using [his] initials instead of [his] full name" because "publishing this record place[d him] at a heightened risk of abuse and maltreatment from the general inmate population." (Doc. 30.)

On February 28, 2025, an IJ held a bond hearing (the "Hearing") in the State of Washington at the conclusion of which Shonhai was denied bond. (Docs. 37-30, 37-31, 52.)[2] On March 14, 2025, the IJ issued a memorandum setting forth reasons for denying Shonhai bond (the "IJ's Memorandum"). (Doc. 37-31.) Shonhai appealed from this decision to the BIA, *see* (Doc. 36 (stating that Shonhai appealed to the BIA)), which dismissed his appeal on June 6, 2025. *See* (Doc. 41 at 1 (stating BIA denied appeal)).[3]

On March 18, 2025, Shonhai filed an emergency motion to enforce the Court's February 14, 2025 Order directing that he receive an individualized bond hearing. (Doc. 32.) He also filed a motion to expedite and a motion to appoint counsel. (Docs. 33, 34.) In his emergency motion, Shonhai asserted that the Hearing was not an *individualized* bond hearing in accordance with

---

[2] By this time, Shonhai was no longer incarcerated at PCCF and was instead confined at the United States Immigration and Customs Enforcement ("ICE")'s Northwest Processing Center in Tacoma, Washington ("NWIPC"). (Doc. 28 at 1.)

[3] Neither party submitted a copy of the BIA's decision nor information relating to the reasons the BIA dismissed the appeal.

this Court's Order, and the Hearing otherwise violated his due process rights under the United States Constitution. (Doc. 32 at 3.)

The following day, the Court entered an Order which, *inter alia*, deemed withdrawn Shonhai's motion to seal due to his failure to file a brief in support of the motion as required by Local Rule 7.5, denied without prejudice his motion to appoint counsel, granted his motion to expedite, and directed Lowe to promptly file a response to the emergency motion. (Doc. 35 at 1–5.) Lowe filed a brief in opposition to Shonhai's emergency motion along with supporting exhibits on March 25, 2025. (Docs. 36, 37.) Shonhai filed a traverse in further support of his emergency motion on April 11, 2025. (Doc. 38.)

On July 8, 2025, Shonhai filed a letter notifying the Court that the BIA dismissed his appeal on June 6, 2025. (Doc. 41.) On September 15, 2025, Shonhai filed separate motions to compel discovery, for a writ of mandamus, and to appoint counsel. (Docs. 43–45.)[4] The following day, he filed a motion

---

[4] Along with his motion to compel discovery, Shonhai's included a motion for reconsideration of the Court's prior Order denying without prejudice his motion to appoint counsel. *See* (Doc. 43 at 7–15). Additionally, Shonhai's motion to appoint counsel and for a writ of mandamus were directed to the Third Circuit Court of Appeals; as such, the Clerk of Court transmitted them to the Third Circuit for its consideration. *See* (Unnumbered Docket Entry Between Docs. 45 and 46). The Third Circuit later denied

*(footnote continued on next page)*

to supplement the record with the Third Circuit's decision to grant a stay of removal in *Shonhai v. Attorney General United States of America*, No. 25-1931 (3d Cir.). (Doc. 46.)

On September 23, 2025, the Court issued an Order which, *inter alia*, (1) denied Shonhai's motion for reconsideration, (2) granted his motion to supplement only to the extent he sought to supplement the record with the Third Circuit's decision to grant a stay of removal, and (3) granted Shonhai's motion to compel discovery and directed Lowe to file a transcript of the Hearing within seven (7) days. (Doc. 47.) A week later, Lowe submitted a letter in which he essentially requested a seven (7)-day extension of time to file a transcript from the Hearing. (Doc. 49.) On October 3, 2025, the Court issued an Order granting Lowe's request and extending the time for him to file a transcript to October 10, 2025. (Doc. 50.)

Shonhai filed a motion to substitute the named Respondent on October 6, 2025. (Doc. 51.) Two (2) days later, Lowe filed an unverified transcript of the Hearing. (Doc. 52.) On October 15, 2025, Shonhai refiled his prior motion to compel discovery along with a motion to reconsider the prior Order

---

without prejudice Shonhai's mandamus petition. *See In re Shonhai*, No. 25-2806, 2025 WL 3205852 (3d Cir. Nov. 17, 2025).

denying without prejudice his motion for appointment of counsel. (Doc. 53.) On November 4, 2025, Shonhai filed a motion to supplement the record with a copy of the transcript from the Hearing. (Doc. 54.) Shonhai's motion to enforce, motion to supplement, motion to substitute respondent, motion for reconsideration, motion to compel discovery, and motion to expedite, are ripe for disposition.

## II.    DISCUSSION

As noted above, Shonhai has six (6) pending motions before the Court: (1) a motion to compel discovery; (2) a motion to submit supplemental evidence; (3) a motion to substitute the respondent; (4) a motion for reconsideration of the Court's prior Order denying his request for appointment of counsel; (5) a motion to expedite; and (6) a motion to enforce the Court's February 14, 2025 Order. The Court will address each motion in turn.

### A.    Motion to Compel Discovery

Shonhai filed a motion to compel discovery in which he seeks an Order compelling Lowe to furnish the audio recording from the Hearing. (Doc. 53.) The Court will deny this motion as moot for two (2) reasons. First, it does not appear that Shonhai is seeking "discovery" through this motion because he

already acknowledged possessing a copy of an audio recording from the Hearing. *See* (Doc. 41 at 1 ("Petitioner was able to obtain the audio recording which was sent from the Executive Office of Immigration Review Freedom of Information Act ("FOIA") Office to Petitioner's fiancée via email. If this Court needs the audio recording for judicial consideration, Petitioner . . . needs an email address to submit it electronically.")). Instead, it appears that he requests that the Court direct Lowe to produce the audio recording as part of the record in this case. So construed, the Court will deny Shonhai's motion as moot because he and Lowe have produced copies of a written transcript of the Hearing. *See* (Docs. 52, 54-1).

**B.    Motion to Submit Supplemental Evidence**

Shonhai moves to have the Court allow him to supplement his written submissions in this case to include arguments pertaining to the transcript from the Hearing. (Doc. 54.) The Court will grant this motion and consider Shonhai's supplemental submission (Doc. 54) when resolving his motion to enforce.

**C.    Motion to Substitute Respondent**

As noted *supra*, when Shonhai filed his Section 2241 petition in this case, he was detained at PCCF, which is located within this District. (Doc. 1

at 18.) Shonhai was then transferred to other detention facilities (Docs. 40, 42), and he is currently detained at NWIPC. (Doc. 42.) Because he is no longer detained in this District, Shonhai moves for an Order directing the Clerk of Court to substitute Todd Lyons ("Lyons"), Acting Director of ICE, Kristi Noem ("Noem"), Secretary of the Department of Homeland Security, and Drew Bostock ("Bostock"), Field Office Director of the Seattle Field Removal Office as Respondents. (Doc. 51 at 3.)[5]

---

[5] Lowe has not filed a response in opposition to this motion. Nevertheless, the Court does not consider the motion to be unopposed because Shonhai did not file a brief in support of his motion to initiate the period for Lowe to file a response. *See* M.D. Pa. L.R. 7.6 ("Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief . . . . Any party who fails to comply with this rule shall be deemed not to oppose such motion."). Rather, he included his legal argument within his motion, *see* (Doc. 51 at 1–4), which is technically improper and should result in the Court deeming the motion withdrawn. *See* M.D. Pa. L.R. 7.5 ("Within fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion. . . . If a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn."). In this instance, the Court will not deem the motion withdrawn because it raises a jurisdictional issue that may be considered *sua sponte*. *See Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1049 (3d Cir. 1993) (explaining that federal courts have a continuing obligation to ensure that they have jurisdiction over a case), *cert. denied sub nom*. *Upp v. Mellon Bank N.A.*, 510 U.S. 964 (1993).

- 10 -

Initially, the Court notes that Shonhai's transfers to facilities outside of this District does not deprive this Court of jurisdiction to consider his pending motions. *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) (explaining that "when the Government moves a habeas petitioner after [they] properly file[] a petition naming [their] immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release"); *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 445 (3d Cir. 2021) ("[T]he government's post-filing transfer of a §2241 petitioner out of the court's territorial jurisdiction does not strip the court of jurisdiction over the petition."). Rather, habeas jurisdiction is evaluated at the time the petition is filed. *See Hope v. Warden York Cnty. Prison*, 956 F.3d 156, 159 n.5 (3d Cir. 2020) ("For purposes of jurisdiction over an immigration-related habeas corpus claim, a petitioner must be in the 'custody' of the federal immigration agency at the time the petition is filed." (citations omitted)). Therefore, since Shonhai filed his petition while detained in PCCF, a facility located in this District, this Court still has jurisdiction over this case regardless of Shonhai's current place of confinement.

As for the proper respondent, the general rule is that the proper respondent is the warden of the facility where the petitioner is being held, not a remote supervisory official. *See Padilla*, 542 U.S. at 434–35. "This is aptly called the 'immediate custodian rule.'" *Anariba*, 17 F.4th at 444 (quoting *Padilla*, 542 U.S. at 435). The immediate custodian rule is applied in immigration habeas cases such as the instant case. *See id.* at 446 (concluding that "the District Court retained jurisdiction following [the immigration detainee's] transfer out of New Jersey because it already had acquired jurisdiction over [the detainee's] properly filed habeas petition that named his then-immediate custodian, the director of the Hudson County Correctional Facility" (citing *Padilla*, 542 U.S. at 441)); *see also Fuentes v. Choate*, No. 24-cv-1377, 2024 WL 2978285, at *6 (D. Colo. June 13, 2024) (pointing out that "the majority of district courts addressing [whether the immediate custodian rule applies in immigration habeas cases] have held that the rule applies to 'core' immigration habeas cases" (footnote and citations omitted)). As such, the Court need not substitute the warden of NWIPC as the named respondent in this case.

The Court recognizes Shonhai's concern with having an appropriate official to effect any relief he receives in this case; however, he should not

be concerned because ICE and the United States Attorney must comply with this Court's orders. *See Kaliku v. U.S. Immigr. & Customs Enf't*, No. 24-cv-3144, 2024 WL 4854523, at *2 (D. Kan. Nov. 21, 2024) ("ICE should not be able to render this Court powerless merely by transferring petitioner in its discretion, and at any rate, ICE and the United States Attorney are responsible for complying with this Court's directives."). Nevertheless, out of an abundance of caution, the Court will grant Shonhai's motion to substitute and substitute Lyons and Bostock as Respondents but deny it as to Noem. The Court will also add the warden of NWIPC as a Respondent. *See, e.g.*, *Elyardo v. Lechleitner*, No. 23-cv-1089, 2023 WL 8259252, at *1 n.1 (M.D. Pa. Nov. 29, 2023) (substituting ICE's deputy director as respondent due to immigration detainee's transfer to a facility outside of this District); *Kaliku*, 2024 WL 4854523, at *2 (indicating that the court "would permit substitution [of the immigration detainee's warden after the detainee's transfer] if necessary to effect relief").

### D.    Motion for Reconsideration

This Court previously denied without prejudice Shonhai's two (2) motions for appointment of counsel. (Docs. 16, 17, 34, 35). In September 2025, Shonhai filed a motion requesting that the Court reconsider the Orders

- 13 -

denying without prejudice his motions to appoint counsel and separately filed his third motion to appoint counsel. (Docs. 43 at 7–15; 45.) The Court denied Shonhai's motions via the Order entered on September 23, 2025. (Doc. 47 at 2–4.) Shonhai has now filed his second motion seeking reconsideration of the prior denials of counsel. (Doc. 53 at 6–14.)

Shonhai's second motion for reconsideration is a verbatim copy of his prior motion for reconsideration. *Compare* (Doc. 43 at 7–15), *with* (Doc. 53 at 6–14). The Court already denied this motion (Doc. 47 at 2–4) and finds no reason to revisit that decision. Accordingly, the Court will again deny Shonhai's motion for reconsideration.

### E.    Motion to Enforce

In his motion to enforce, Shonhai generally contends that the Hearing was not an individualized bond hearing in accordance with the Court's February 14, 2025 Memorandum and Order granting him habeas relief, and he seeks an Order directing that he receive a second bond hearing that complies with his due process rights. (Doc. 32 at 19.) Lowe opposes Shonhai's motion, arguing that the IJ conducted an individualized bond

hearing, and Shonhai failed to exhaust his administrative remedies before challenging the constitutionality of the Hearing. (Doc. 36 at 18–29.)

### 1.      Jurisdiction

Before addressing the exhaustion issue and, if appropriate, the merits of Shonhai's motion to enforce, the Court must first ensure that jurisdiction over Shonhai's case is still present. *See Packard*, 994 F.2d at 1049 (explaining that federal courts have continuing obligation to ensure they have jurisdiction to hear the matter before them). The Court's jurisdictional review in this case reveals an unsettled question of law warranting further discussion: Although a district court has jurisdiction under Section 2241 to consider an immigration detainee's due-process challenge to their continued detention under 8 U.S.C. §1226(c) and order that they receive an individualized bond hearing, does the district court retain jurisdiction to consider the detainee's challenge to the bond hearing? Resolving this question requires reconciling an inherent power of this Court (and federal courts generally) with congressionally imposed limitations on federal courts' jurisdiction in immigration matters.

As to the former, federal courts have "the inherent power to enforce [their] own orders." *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d

- 15 -

177, 194 (3d Cir. 2020) (citations and internal quotation marks omitted). Consequently, several courts of appeals, including the Third Circuit Court of Appeals, have concluded that district courts retain jurisdiction to determine whether a respondent has complied with the terms of a conditional order granting habeas relief. *See Gibbs v. Frank*, 500 F.3d 202, 205 (3d Cir. 2007) ("The District Court had continuing jurisdiction under 28 U.S.C. §§1331 and 2254 over Gibbs' application for release from confinement." (citations omitted)); *Jensen v. Pollard*, 924 F.3d 451, 454 (7th Cir. 2019) ("When a district court issues a conditional habeas writ, it retains jurisdiction to determine compliance."); *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) (explaining that an immigration detainee was "correct that the district court had authority to review compliance with its earlier order" directing that the detainee receive a bond hearing before an immigration judge); *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006) ("A federal district court retains jurisdiction to determine whether a party has complied with the terms of a conditional order in a habeas case." (citation and internal quotation marks omitted)). District judges in this District and the Third Circuit have reached similar conclusions. *See, e.g.*, *Santos v. Lowe*, No. 18-cv-1553, 2020 WL 4530728, at *2 (M.D. Pa. Aug. 6, 2020) ("[D]istrict courts have

- 16 -

continuing jurisdiction to address alleged noncompliance with writs of habeas corpus." (citing *Gibbs*, 500 F.3d at 205)), *aff'd sub nom.*, *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203 (3d Cir. 2020); *Wilkins v. Doll*, No. 17-cv-2354, 2018 WL 3388032, at \*2 (M.D. Pa. July 12, 2018) ("There is no question that this court has the power to enforce its writs of habeas corpus." (citing *Sylvain v. Att'y Gen. of U.S.*, 714 F.3d 150, 155 (3d Cir. 2013) and *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011))); *Morgan v. Oddo*, No. 24-cv-221, 2025 WL 2653707, at \*3 (W.D. Pa. Sept. 16, 2025) ("As a general proposition, it is beyond reasonable dispute that a habeas court retains jurisdiction to enforce compliance with an order conditionally granting the writ." (citations omitted)); *K.A. v. Green*, No. 18-cv-3436, 2018 WL 4676049, at \*2 (D.N.J. Sept. 28, 2018) ("Following the grant of habeas relief, a district court retains continuing jurisdiction to address alleged failures to comply with the court's orders." (citing *Gibbs*, 500 F.3d at 205–06)).

Although federal courts possess this inherent power, Congress has potentially limited it in the context of bond proceedings in immigration cases through the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Specifically, Section 1226(e) of IIRIRA states in pertinent

part that "[t]he Attorney General's discretionary judgment regarding the application of [8 U.S.C. §1226] shall not be subject to review. No court may set aside any action or decision by the Attorney General under [8 U.S.C. §1226] regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. §1226(e).[6]

On its face, the second sentence of Section 1226(e) appears to bar this Court from considering Shonhai's motion to enforce because granting him relief in this case would seemingly require the Court to "set aside . . . [a] decision . . . regarding the . . . denial of bond." *Id.* The Third Circuit has not addressed Section 1226(e)'s potential jurisdictional bar in a precedential decision involving circumstances like those presented in this case, *i.e.,*

---

[6] The Supreme Court has provided conflicting statements about whether the adjective "discretionary" in Section 1226(e) applies to both sentences of this section. *See Miranda v. Garland*, 34 F.4th 338, 352–53 (4th Cir. 2022) (pointing out that "the Supreme Court's decisions [discussing Section 1226(e)] do not provide a clear answer" whether Section 1226(e) "precludes jurisdiction" over disputes relating to applicable burden of proof in an immigration bond hearing). *Compare Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) ("[Section] 1226(e) precludes an alien from 'challeng[ing] a "discretionary judgment" by the Attorney General *or* a "decision" that the Attorney General has made regarding [their] detention or release.'" (first alteration in original) (emphasis added) (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003))), *with Nielsen v. Preap*, 586 U.S. 392, 401 (2019) (plurality opinion) (indicating that the "limitation" in Section 1226(e) "applies only to 'discretionary' decisions about the 'application' of [Section] 1226 to particular cases").

where a district court grants an immigration detainee's Section 2241 habeas petition, directs the respondent to conduct an individualized bond hearing with the government bearing the burden of proof by clear and convincing evidence, and later considers the detainee's challenge to the denial of bond at the hearing. It has, however, seemingly recognized in two (2) nonprecedential decisions that district courts have jurisdiction to consider an immigration detainee's due process challenge to a bond hearing. *See Quinteros v. Warden Pike Cnty. Corr. Facility*, 784 F. App'x 75 (2019) (nonprecedential); *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624 (3d Cir. Feb. 25, 2022) (nonprecedential).[7]

---

[7] The Court located only two (2) Third Circuit decisions prior to *Ghanem* containing references to the possible impact of Section 1226(e) on a district court's review of an IJ's bond denial, each of which could persuasively support a different determination on the jurisdictional issue. *Compare Asemani v. Att'y Gen. of U.S.*, 140 F. App'x 368, 376 (3d Cir. 2005) (nonprecedential) (stating that two (2) cases involving challenges to bond denials "should be denied because the IIRIRA specifically prohibits direct review of bond orders" (citing 8 U.S.C. §1226(e))), *with Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274 (3d Cir. 2018) (pointing out that Section 1226(e) did not deprive the courts of jurisdiction to hear the petitioner's request that he was entitled to a new bond hearing because he did not "challenge a particular action or decision, but rather the statutory framework that permits his detention without bail," but explaining that the petitioner's request "to compel a second bond hearing despite alleging no constitutional defect in the one he received . . . comes close to asking this Court to directly review the IJ's bond decision, a task Congress has expressly forbidden us from undertaking").

In *Quinteros*, the earlier of those two (2) decisions, the Third Circuit determined that a district court had jurisdiction to consider an immigration detainee's habeas petition in which they claimed that their bond hearing before the IJ "had not met constitutional requirements." 784 F. App'x at 77. Despite determining that jurisdiction was present, the Third Circuit explained that a federal court's "jurisdiction to review immigration detention decisions" was "limited" because Section 1226(e) "shields from review . . . [t]he Attorney General's discretionary judgment regarding the application of" Section 1226 and precludes courts from "set[ting] aside any action or decision by the Attorney General . . . regarding the . . . denial of bond or parole." *Id.* (internal quotation marks omitted) (quoting 8 U.S.C. §1226(e)). Due to these limitations, the Third Circuit understood Section 1226(e) to preclude "review [of] discretionary decisionmaking involved in denial of a bond," but not "the legal standard underlying immigration officials' actions and to evaluate legal and constitutional claims on that basis." *Id.* (citing *Sylvain*, 714 F.3d at 155).

The Third Circuit then proceeded to review the immigration detainee's "challenges that pertain to the adequacy of process he received at his bond hearing," and explained that due process requires the following three (3) things: "An alien: (1) is entitled to factfinding based on a record produced

- 20 -

before the decisionmaker and disclosed to [them]; (2) must be allowed to make arguments on [their] own behalf; and (3) has the right to an individualized determination of [their] interests." *Id.* at 78 (quoting *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001)). Upon its review of the immigration detainee's bond hearing, the Third Circuit concluded that the hearing complied with those due process requirements. *Id.* The Third Circuit also determined that it "lacked jurisdiction to consider [the immigration detainee's] primary argument—that the IJ failed to sufficiently consider [his] present dangerousness—because it" required the court to "reweigh the IJ's discretionary decisionmaking." *Id.*

As for *Ghanem*, the second of the Third Circuit's applicable nonprecedential decisions, the court addressed a habeas action with a procedural history almost identical to the instant case. An immigration detainee filed a petition for a writ of habeas corpus challenging his prolonged detention. *See* 2022 WL 574624, at *1. The district court "granted the petition in part by ordering the IJ to hold an individualized bond hearing." *Id.* The IJ then held a bond hearing and denied bond, after which the IJ issued a memorandum setting forth the reasons for denying bond. *Id.* The petitioner appealed from the denial of bond, and the BIA affirmed. *Id.* The petitioner

- 21 -

then filed a motion to enforce the writ of habeas corpus with the district court.

*Id.* at *2. The district court denied the motion to enforce, and the petitioner

appealed from this decision to the Third Circuit. *Id.*

On appeal, the Third Circuit identified the applicable standard of review

as follows:

> We review a district court's denial of a motion to enforce its own
> judgment for abuse of discretion. [*Union Switch & Signal Div. Am.
> Standard Inc. v. United Elec., Radio & Mach. Workers of Am.,
> Loc. 610*, 900 F.2d 608, 609 (3d Cir. 1990).] Although we lack
> jurisdiction to review any discretionary determinations underlying
> the IJ's bond decision, [8 U.S.C. §1226(e),] we may review
> whether the bond hearing was fundamentally unfair.

*Id.* (footnotes omitted). For a "fundamentally fair bond hearing," the Third

Circuit repeated the requirements set forth in *Quinteros*: "[D]ue process has

three essential elements. "An alien (1) is entitled to factfinding based on a

record produced before the decisionmaker and disclosed to [them]; (2) must

be allowed to make arguments on [their] own behalf; and (3) has the right to

an individualized determination of [their] interests." *Id.* (quoting *Kamara v.

Att'y Gen. of U.S.*, 420 F.3d 202, 211 (3d Cir. 2005)).[8]

---

[8] The Third Circuit noted that "[a] motion to enforce a judgment is not
the proper avenue to relitigate the merits of a bond order." *Id.*

After identifying the requirements for a "fundamentally fair bond hearing," the Third Circuit rejected the petitioner's arguments that his bond hearing violated his due process rights because his challenges to the bond hearing effectively constituted requests to reweigh the evidence presented during the hearing, and the IJ and BIA's determinations about those pieces of evidence were unreviewable. *Id.* at *2–3. The Third Circuit also cautioned that "just because there are disagreements about the outcome of the bond hearing, this does mean that the IJ violated due process in conducting the bond hearing." *Id.* at *3.

Based on *Quinteros* and *Ghanem*, the Third Circuit acknowledges that an immigration detainee may challenge whether their bond hearing complied with due process, whether in the first instance through a habeas petition or through a motion to enforce a district court's order granting habeas relief and requiring that the immigration detainee receive an individualized bond hearing. Unfortunately, without a binding precedential decision to follow, district judges in the Third Circuit, as well as from this District, have reached conflicting decisions on this jurisdictional issue.

Prior to November 2025, the decisions from this District and other district courts in the Third Circuit consistently recognized that although

Section 1226(e) deprives district courts of jurisdiction to review immigration judges' discretionary bail decisions, it does not preclude them from continuing to exercise habeas jurisdiction to ensure that respondents comply with their habeas writs. *See Santos*, 2020 WL 4530728, at *2 (recognizing that Section 1226(e) precludes district courts from reviewing immigration judges' discretionary bail decisions but rejecting respondent's argument that Section 1226(e) deprives district courts' "habeas jurisdiction to enforce compliance with [their] habeas writs" (quoting *Guerrero Sanchez v. Sabol*, No. 15-cv-2423, 2016 WL 7426129, at *4 (M.D. Pa. Dec. 23, 2016))); *Guerrero Sanchez*, 2016 WL 7426129, at *4 (explaining that even though a district court may not review "a discretionary determination by an immigration judge regarding bail for an alien being detained under section 1226," "issues of constitutionality and law are fair game for the district court to consider under its habeas corpus jurisdiction[, and the district court] . . . most certainly has the power under its habeas jurisdiction to enforce compliance with its habeas writs" (internal citations omitted)); *Morgan*, 2025 WL 2653707, at *3 (pointing out that "there is little guidance from the [Third Circuit] as to the interplay between this Court's authority to enforce its prior conditional grant of the writ, and Section 1226(e)'s bar of review of the IJ's discretionary bond

- 24 -

decision," but relying on *Ghanem* to reject respondent's argument that Section 1226(e) divests it of jurisdiction to "review the bond hearing for fundamental fairness"); *Coffie-Joseph v. Oddo*, No. 24-cv-114, 2025 WL 2596940, at *1 (W.D. Pa. Sept. 8, 2025) ("This court has jurisdiction to issue a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241 compelling the holding of a bond hearing under *German Santos*[, 965 F.3d at 211], but that does not give this court appellate jurisdiction over the decision, except in the limited sense that it can enforce its writ where the [IJ] conducting the bond hearing ignored the law of the case or [the hearing] was so arbitrary that it could be considered a sham." (citation omitted)); *see also Wilkins*, 2018 WL 3388032, at *2 (granting, without referencing Section 1226(e), immigration detainee's motion to enforce prior habeas order directing detainee to receive an individualized bond hearing because the detainee did not receive an individualized hearing); *K.A.*, 2018 WL 4676049, at *2 ("A petitioner who has already received [a bond hearing] may . . . only challenge the denial of [their] request for release on bond by showing that [their] bond hearing was not bona fide – i.e., that it was in some way conducted in violation of [d]ue [p]rocess or some other binding legal authority."). But in *White v. Lowe*, 2025 WL 3187511 (M.D. Pa. Nov. 14, 2025) the District Court

- 25 -

concluded that it lacked jurisdiction to consider an immigration detainee's motion to enforce its prior order granting his Section 2241 petition and directing that he receive an individualized bond hearing before an IJ.

In concluding that the court lacked jurisdiction to consider the detainee's motion to enforce, it explained as follows:

> The statute governing detention of removable aliens prior to a final order of removal, 8 U.S.C. §1226, states that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. §1226(e). The Third Circuit has repeatedly recognized that this language means what it says: courts may not reverse an administrative decision denying bond in an immigration proceeding. *See Borbot*[, 906 F.3d at 279]; *Sylvain*[, 714 F.3d at 155 & n.4]. Thus, because any review of the immigration judge's bond hearing that resulted in a second bond hearing would necessarily "set aside" the immigration judge's denial of bond, it is clearly barred by Section 1226(e).
>
> Courts in this district that have granted motions [to enforce] like White's have acknowledged Section 1226(e)'s jurisdictional limitation, but have held that they may nonetheless review the immigration judge's bond determination pursuant to their jurisdiction to enforce the earlier writ of habeas corpus. *See, e.g.*, *Santos*, 2020 WL 4530728, at *2 ("Respondent is correct that a discretionary determination by an IJ regarding bail for an individual detained pursuant to §1226 is not reviewable by this Court . . . However, '[t]here is no question that this [C]ourt has the power to enforce its writs of habeas corpus.'" (quoting *Wilkins*, 2018 WL 3388032, at *2)).
>
> This reasoning strikes the court as incorrect. United States District Courts may only exercise subject matter jurisdiction to the extent Congress has allowed. *Badgerow v. Walters*, 596 U.S.

- 26 -

1, 11 (2022). "And the jurisdiction Congress confers may not 'be expanded by judicial decree.'" *Id.* (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). It follows that a district court may not create subject matter jurisdiction it did not have in the first place by issuing a writ of habeas corpus and then purporting to "enforce" that writ. Thus, this court had the authority to order ICE to conduct a bond hearing, but once that hearing was conducted, it does not have the authority to review the sufficiency of the hearing. Any such review must be conducted through the administrative channels provided by Section 1226 and its implementing regulations.

*Id.* at *2–3.

As demonstrated by the above discussion, the law in this Circuit pertaining to the jurisdictional question in this case is unsettled. White's rationale for concluding that Section 1226(e) precludes review of an immigration detainee's motion to enforce a habeas order requiring an individualized bond hearing is arguably intuitive because it seemingly follows the language of the statute. Section 1226(e) states in pertinent part that "***[n]o court*** may ***set aside any action or decision*** by the Attorney General under this section regarding the . . . ***denial of bond*** . . . ." 8 U.S.C. §1226(e) (emphasis added); *see also Demore*, 538 U.S. at 534 (O'Connor, J., concurring) ("[T]he signal sent by Congress in enacting §1226(e) could not be clearer: "*No court* may set aside *any action or decision* . . . regarding the detention or release of any alien." . . . There is simply no reasonable way to

- 27 -

read this language other than as precluding all review, including habeas review, of the Attorney General's actions or decisions to detain criminal aliens pursuant to §1226(c).").

Despite the conclusion employed in *White*, this Court adopts the Third Circuit's nonprecedential decisions in *Quinteros* and *Ghanem*, both of which recognize that Section 1226(e) does not deprive federal courts of jurisdiction to address due process challenges to bond hearings, *see Ghanem*, 2022 WL 574624, at *2 (explaining that federal courts "may review whether the bond hearing was fundamentally unfair" (footnote omitted)); *Quinteros*, 784 F. App'x at 78 (explaining that federal courts are "limited to reviewing only those of Quinteros' challenges that pertain to the adequacy of process he received at his bond hearing"), as persuasive authority in resolving the jurisdictional question in this case. *See N.J., Dep't of Treasury, Div. of Inv. v. Fuld*, 604 F.3d 816, 823 (3d Cir. 2010) (acknowledging that its unpublished/nonprecedential opinions may contain persuasive reasoning. These decisions also comport with the only other circuit court, as well as the consensus of district courts from outside of the Third Circuit, to address the issue. *See Martinez v. Clark*, 36 F.4th 1219, 1230 (9th Cir. 2022) (determining that the district court retained jurisdiction to address

immigration detainee's claims that the BIA applied the wrong burden of proof and failed to consider alternatives to continued detention "because they are challenges to the legal standards or statutory framework used in bond determinations and are thus 'constitutional claims or questions of law.'" (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011))), *cert. granted and judgment vacated on other grounds by* 144 S.Ct. 1339 (2024); *Massingue v. Streeter*, No. 19-cv-30159, 2020 WL 1866255, at *3–4 (D. Mass. Apr. 14, 2020) (discussing that "[t]he weight of authority, including authority in this district, does not support the government's contention that this court lacks jurisdiction to consider Petitioner's claim that [their] bond hearing was not in compliance" with the Constitution). In *Hechavarria v. Whitaker*, the Western District of New York ("WDNY") stated that, when addressing a motion to enforce a prior order granting conditional habeas relief, "the Court is not reviewing a 'discretionary judgment' of the IJ under §1226, and it is not 'set[ting] aside any action or decision by the Attorney General' under §1226. . . . Instead, the Court is determining whether the order it issued . . . was followed . . . ." 358 F. Supp. 3d 227, 235–36 (W.D.N.Y. 2019) (quoting 8 U.S.C. §1226(e)). Following the reasoning in *Quinteros* and *Ghanem* also preserves a district court's inherent power to enforce its

habeas orders by ensuring that the individualized bond hearings are not shams and otherwise comply with the detainee's due process rights. Accordingly, the Court concludes that jurisdiction remains to consider Shonhai's motion to enforce and will now address Lowe's exhaustion argument and, if proper, the merits of Shonhai's claims to the extent they are limited to constitutional concerns about the Hearing.

### 2.    Exhaustion

Lowe contends that the Court should deny Shonhai's motion to enforce because he failed to exhaust his claims pertaining to the denial of bond by completing his appeal to the BIA prior to filing his motion in this case. (Doc. 36 at 26–29). As such, Lowe requests that the Court allow Shonhai to "continue his appeal to the BIA and join the number of courts within this district that found exhaustion [was] required prior to any review." (*Id.* at 29.)

Unfortunately, whether an immigration detainee is required to file and complete an appeal to the BIA from an IJ's bond denial is another area of unsettled law in the Third Circuit and in this District. As Lowe points out in his brief opposing Shonhai's motion, there are several decisions in this district reaching conflicting conclusions about whether exhaustion is

required. *See* (*id.* at 27–28 (citing cases)). In addition, it does not appear that the Third Circuit has addressed this issue to date.

Despite this lack of binding guidance, the reasons supporting the exhaustion requirement in Section 2241 habeas cases in general appear to apply equally to an immigration detainee's bond denial. *See Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 761–62 (3d Cir. 1996) (discussing that even though Section 2241 does not contain an explicit exhaustion requirement (unlike 28 U.S.C. §2254), exhaustion of administrative remedies is required before filing a Section 2241 habeas petition because it: "(1) allow[s] the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permit[s] agencies to grant the relief requested conserves judicial resources; and (3) provid[es] agencies the opportunity to correct their own errors fosters administrative autonomy" (citations omitted)). Imposing an exhaustion requirement in these instances also does not unfairly burden the detainee because they may still seek to have exhaustion excused if it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm." *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988).

A detainee's ability to argue that they should be excused from exhaustion is particularly important in IJ bond determinations because, "it is not at all clear that the BIA could evaluate the legality of the IJ's bond determination in relation to [the district court's order]—the BIA has, for example, consistently refused to reach and decide constitutional questions." *Y.S.G. v. Andrews*, No. 25-cv-1884, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025) (citing *Matter of Fede*, 20 I. & N. Dec. 35 (BIA 1989) and *Matter of Fuentes-Campos*, 21 I. & N. Dec. 905, 912 (BIA 1997)); *see also Aguilar Estrada v. ICE/ERO Williamsport Sub Off.*, No. 25-cv-429, 2025 WL 3443229, at *1 (M.D. Pa. Dec. 1, 2025) ("Exhaustion is not required . . . if there is no opportunity to obtain adequate redress . . . . (citations omitted)).

In this case, however, and as described below, the Court will excuse Shonhai's failure to complete his appeal with the BIA prior to filing his motion to enforce because denying Shonhai's motion to enforce without prejudice to him refiling it once he exhausted his appeal with the BIA is nonsensical considering that the BIA already dismissed his appeal from the IJ's bond denial in June 2025. Therefore, the Court will now proceed to address the merits of Shonhai's motion to enforce.

### 3.    The Merits

In his motion to enforce, Shonhai raises several arguments in support of his general claim that the IJ did not conduct an individualized bond hearing in accordance with the Court's Order. First, he points out that the IJ could not have complied with the Court's Order because they acknowledged not having a copy of it during the Hearing, the government did not provide her with a copy of it during the Hearing (even though the IJ asked if they would do so), and it was not included in the government's evidence submitted for the Hearing. (Docs. 32 at 6; 38 at 4–6; 54 at 7–9.) Second, he asserts that despite stating on the record that the IJ considered all the evidence and submissions in the case, the IJ showed from the outset of the Hearing that she was unfamiliar with the facts of his case and "had not reviewed or considered [his] extensive supporting evidence for [his] request for bail." (Doc. 32 at 7, 14–15.) Third, he contends that the IJ treated the Hearing as a bond redetermination request instead of an initial bond hearing where the government had to produce clear and convincing evidence that he is a flight risk and a danger to the community to support continuing his detainment. (*Id.* at 7; Doc. 54 at 5–7.) Fourth, he argues that the IJ exceeded her jurisdiction by considering the lack of relief available to him insofar as he was previously

- 33 -

found to be ineligible for a waiver or inadmissibility, despite this Court having already concluded that his continued detention had become unreasonable as a matter of law. (Doc. 32 at 7–8.) Fifth, he maintains that the IJ erred by failing to apply Third Circuit precedent when deciding whether he is a flight risk and a danger to the community. (*Id.* at 8–9.) Sixth, he asserts that the IJ improperly relied on his criminal conviction for sexual battery in 2011, as well as his probation violation in 2014, to determine that he is a danger to the community even though those events occurred more than ten (10) years before the Hearing. (Docs. 32 at 9–11; 38 at 8–9; 54 at 10–11.) Seventh, he contends that the IJ committed an error of law in concluding that he was a flight risk because she was aware that the Chief District Judge for the Southern District of Indiana released him to self-surrender for service of his sentence at a later date, and he self-surrendered to serve his sentence despite knowing that termination of his asylee status would be sought at the culmination of his criminal proceedings. (*Id.* at 11–12; Doc. 38 at 7–8.) Eighth, he claims that the evidence in the record does not support a finding that he is a danger to the community or a flight risk, and he points out that the government did not contest his evidence in support of his argument that he is not a danger to the community or a flight risk. (Docs. 32 at 13–14; 38

at 8; 54 at 14–16.) Ninth, and finally, he asserts that the IJ improperly relied on a "mechanistic factor" common to all immigration detainees subject to prolonged detention, *i.e.*, the existence of an IJ's removal order, in denying bond. (Docs. 32 at 14; 54 at 10, 17–18.) Along with these challenges to the individualized nature of the Hearing, Shonhai argues that the government did not carry its burden to prove by clear and convincing evidence that his "continued detention is necessary to fulfill the purposes of the detention statute." (Doc. 32 at 16–19 (quoting *German Santos*, 965 F.3d at 214)).

In his response to Shonhai's motion, Lowe maintains that Shonhai, as ordered by this Court, received an individualized bond hearing with the IJ on February 28, 2025, at the conclusion of which, the IJ "found by clear and convincing evidence that Shonhai presented a danger to the community and was a flight risk." (Doc. 36 at 19.) Lowe also points out that Shonhai's arguments are contradicted by the record from his bond proceedings. (*Id.* at 20–24.) For instance, despite Shonhai asserting that the IJ did not have the Court's February 14, 2025 Order for her review because it was not part of the record, Lowe notes that the evidentiary record from those proceedings, which is attached as an exhibit to his opposition brief, includes a copy of the Court's Order. (*Id.* at 20 n.2 (citing Doc. 36-32 at 350)).

Lowe relies on the IJ's Memorandum as demonstrating the inaccuracies of Shonhai's contentions about the deficiencies with the Hearing. (*Id.* at 20–24.) He argues that the IJ's Memorandum shows that the IJ, *inter alia*: (1) determined that Shonhai was a danger to the community and a flight risk after considering his "prior criminal history, inclusive of its temporal nature to the bond hearing, and the potential for flight from the proceedings given the status of his administrative proceedings," (*id.* at 21 (citing Doc. 36-31 at 3–5)); (2) listed all evidence Shonhai submitted in support of his release, (*id.* (citing Doc. 36-31 at 1–2)); (3) set forth the relevant procedural history and recognized that the government had the burden to prove his continued detainment by clear and convincing evidence, (*id.*); (4) explained that "Shonhai 'was a vocal advocate in his case,' before recounting [his] testimony, inclusive of his family ties to the United States," (*id.* (citing Doc. 36-31 at 2)); and (5) "recounted Shonhai's testimony in explaining his past criminal offenses, including the temporal proximity of his sexual offense conviction, his efforts to reform himself, and where he would live if released on bond," (*id.* at 21–22 (citing Doc. 36-31 at 2–3)).

As for Shonhai's other challenges to the Hearing, Lowe's asserts that even though Shonhai correctly states that the IJ's Memorandum does not

include references to Third Circuit precedent, the IJ addressed whether the government proved by clear and convincing evidence that he was a danger to the community and a flight risk, *see* (*id.* at 22 (citing Doc. 36-31 at 1–2)), which is in accordance with Third Circuit precedent. (*Id.* (citing *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 478 n.12 (3d Cir. 2015) and *German Santos*, 965 F.3d at 213–14)). Regarding Shonhai's criminal history, Lowe acknowledges that the IJ "undoubtedly considered [his] conviction for sexual battery of an intoxicated 15-year-old in violation of [Indiana law]," they "considered that conviction as a pattern of criminal conduct and failure to follow court directives that spans over a decade." (*Id.* at 23 (citing Doc. 36-31 at 3–5)). This pattern of conduct included Shonhai's admission that he failed to complete sex offender treatment and did not pay fees associated with his Indiana conviction, his arrest in 2014 for operating a vehicle while intoxicated, and his 2022 conviction for attempting to defraud the federal government. (*Id.* at 23–24 (citing Doc. 36-31 at 3–5)).

Concerning Shonhai's flight risk, Lowe asserts that even though the IJ considered his lack of available administrative remedies due to the order of removal as well as the denial of a waiver of ineligibility, it was not in "an effort to exceed the immigration court's jurisdiction" but to acknowledge that

"Shonhai is more likely to abscond while on bail." (*Id.* at 24.) Moreover, Lowe contends that the IJ's determination that Shonhai is a potential flight risk is supported by his 2022 conviction for defrauding the government when he used his brother's identification on a job application in 2019. (*Id.* at 24–25.)

The Court has carefully considered and reviewed the parties' arguments pertaining to the constitutionality of the Hearing.

On the one hand, Shonhai argues that the Hearing itself fails to pass constitutional muster. On the other hand, Lowe argues that the IJ's Memorandum shows that Shonhai's due process rights were not violated because he received an individualized bond hearing during which the IJ placed the burden on the government to show that his continued detention was supported by clear and convincing evidence.

The IJ's Memorandum shows that her fact-finding was based on the entire record produced prior to and during the Hearing and was not based on any off-the-record information. *See, e.g.*, (Doc. 36-31 at 3 (listing evidence Shonhai submitted on his behalf)). In addition, the IJ's Memorandum shows that Shonhai had the opportunity to argue on his own behalf, and the IJ noted that Shonhai was "a vocal advocate in his case," recited his testimony, and identified his arguments. (*Id.* at 3–4, 6.) Overall,

- 38 -

the IJ's Memorandum is thorough and comprehensive, and it demonstrates that the IJ conducted an individualized review of Shonhai evidence and, to the extent that he argues otherwise, the Court cannot consider this argument because it "amounts to an allegation of improper evidence weighing[, which] is not within [the Court's] authority to consider." *Ghanem*, 2022 WL 574624, at *3.

While it is acknowledged that at the outset of the Hearing, the IJ incorrectly described the proceeding as a bond redetermination hearing, *see* (Doc. 52 at 2), which is significant because at such a hearing, "the burden is on the detainee to show to the satisfaction of the IJ that [they] warrant[] release on bond." *Chavez v. Immigr. and Customs Enf't Field Off. Dir.*, No. 23-cv-1631, 2024 WL 1661159, at *2 (W.D. Wash. Jan. 25, 2024) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)), *report and recommendation adopted*, 2024 WL 1658973 (W.D. Wash. Apr. 17, 2024). Based on this misunderstanding, the IJ initially informed Shonhai that he, and not the government, had the burden of proof to show that he is not a danger or a flight risk. *See* (Doc. 52 at 5 ("[IJ]: Okay. So, what else do you want to tell the court about? . . . [S]o sir, it appears the burden of proof is that . . . you

have to show you're not a danger or a flight risk since this is your initial bond hearing.")).

Once the ALJ stated that Shonhai had the burden of proof, Shonhai explained to the IJ that this Court's Order placed the burden on the government to prove by clear and convincing evidence that he poses a danger to the community and is a flight risk. *See* (*id.* ("Shonhai: The order from . . . granting my petition of the [sic] habeas corpus put the burden on the government to prove with clear and convincing evidence that I'm not a danger to society or a flight risk because . . . it was granted.")). At that point, the IJ indicated that she did not have this Court's Order pertaining to the bond hearing and asked the government if they had a copy of the Order for her review or whether they could obtain it through PACER. (*Id.* at 6.) There is no indication in the transcript that the government ever produced a copy of the Order to the IJ, and the IJ never acknowledged the existence or even an awareness of the Order <u>during</u> the Hearing. (*Id.* at 6–7.)

Following the hearing, the IJ orally issued her decision denying bond:

Alright, sir, you've done very well presenting your evidence and argument, . . . but it does not change the facts in your case. I am very concerned about your criminal history, the nature, . . . and the victim, and the continued violations of the law. I find you are certainly a flight risk where you are, have been convicted relating to a document and you are, . . . purporting to be a United States

citizen. [G]iven all the evidence presented – and I do appreciate the fact that you did take . . . courses while you were incarcerated and in, attempted to . . . improve . . . your situation – I don't find, . . . however that . . . this affects the Government's burden. And I do find the Government has met its burden that you are a danger and a flight risk. I do not find conditions to the bond, or a monetary amount are . . . appropriate in this situation. Especially since your case has been denied, you had another chance. It was denied, and it's pending on appeal. There have been essentially no change circumstances. So, you're subject to an order of removal and . . . I understand you continue to fight your case. Alright, so that will be the order . . . .

(*Id.* at 18.)

The above summary of what occurred during the Hearing, as reflected by the transcript submitted by Lowe, shows that the IJ initially believed that she was presiding over a bond redetermination, initially informed Shonhai that he, and not the government, had the burden of proof, and never properly identified the government's burden of proof as clear and convincing evidence.

Despite these concerning aspects about the Hearing, the Court concludes that Shonhai received all the process he was due. *See Quinteros*, 784 F. App'x at 78 (setting forth due-process requirements for an immigration detainee's bond hearing). In the first instance, the IJ provided Shonhai with the opportunity to be heard during the Hearing. The IJ permitted Shonhai to discuss his family living in the United States, his prospective living

arrangements if released, his prior immigration proceedings, his certificates earned during his confinement, and his incarceration history. *See, e.g.*, (Doc. 52 at 3–4, 5–11). Shonhai heard the government's description of his criminal history and its position that he was a danger to the community and a flight risk. *See* (*id.* at 7). Thereafter, the IJ permitted Shonhai to argue on his own behalf and present any evidence he wished to present to the extent that it was not already in the administrative record. *See* (*id.* at 8–18). The IJ informed Shonhai that she would "consider all of the evidence in [his] case," *see* (*id.* at 10), and she assured him that she had "thoroughly reviewed the record." *See* (*id.* at 12).

In addition, the Court declines to adopt Shonhai's position that the due-process inquiry is solely limited to the manner in which the IJ conducts a bond hearing and does not include an IJ's written decision following the bond hearing. It is surely not unusual for a judge to hold a hearing or oral argument, orally express a determination, and then set forth their decision in greater detail through a written document issued after the hearing or oral argument. The Court is unaware of a precedential decision holding that an individual's due process rights are violated if the judge elaborates on an oral decision

rendered during a hearing via a written document issued after the hearing concludes.

The Court acknowledges that the IJ, in reaching her oral decision, expressly stated that she found that the government "met its burden that [Shonhai is] a danger and a flight risk" (Doc. 52 at 18), without expressly stating that the government had to satisfy its burden by clear and convincing evidence. However, the IJ did indicate that she placed the burden on the government, and a due-process violation does not occur simply because a judge does not specifically identify a party's burden when rendering an oral decision, especially when she provides a written decision thereafter.

As for the other due-process requirements for an individualized bond hearing, the IJ's decision to decline to release Shonhai on bond was based on factfinding from the record before the IJ. This is evidenced by the IJ's Memorandum, which contains a thorough recitation of the evidence in the record, including evidence presented during the Hearing, and it identifies the evidence the IJ relied upon in reaching her decision. *See* (37-31 at 3–6). The IJ's Memorandum also reflects that Shonhai received an individualized determination of his interests in the case. It expressly states that the IJ held the government to its burden to justify Shonhai's continued detention by clear

and convincing evidence. *See* (*id.* at 2). It also evidences the IJ's consideration of the specific facts of Shonhai's case when reaching their decision. *See* (*id.* at 3–6).

In conclusion, the Court finds that Shonhai received an individualized bond hearing as ordered by this Court which complied with due process. The court is not authorized to, nor will it opine on the discretionary decision of the Attorney General, through the IJ, of her determination of the weight of the evidence and finding on the issue of bail.  Accordingly, the Court will deny Shonhai's motion to enforce and deny his motion to expedite as moot.

## III.    CONCLUSION

For the reasons stated above, the Court will grant Shonhai's motions to supplement and to substitute, deny his motions to compel discovery and to expedite as moot, deny his motion for reconsideration, and deny his motion to enforce. An appropriate Order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: February 26, 2026**
24-229-03

- 44 -